# Abdul K. Hassan, Esq.
## Attorney and Counselor at Law
215-28 Hillside Avenue, Queens Village, New York 11427
Phone: 718-740-1000 Fax: 718-355-9668 Email: abdul@abdulhassan.com

**Via ECF**

**April 27, 2013**

Hon. Catherine O'Hagan Wolfe, Clerk of Court
Second Circuit Court of Appeals
40 Foley Square
New York, NY 10007

>         **Re: Cabrera v. Nassau Medical Services**
>                 **Second Circuit Docket #: 12-cv-3289**
>                 **Supplemental Brief**

Dear Clerk O'Hagan Wolfe:

      I represent Appellant Maria Cabrera in the above-referenced case and thank this Honorable Court for the opportunity of addressing the jurisdictional issues raised by the Court.

### 1. THE CHALLENGED ORDER(S) ARE APPEALABLE

      On the issue of whether the challenged orders are appealable, the Court stated in relevant part as follows[1]:

> It is also unclear whether the July 17, 2012 order is an appealable order, as no adverse judgment was entered against plaintiff and plaintiff was not aggrieved by the July 17, 2012 order. See Trust for Certificate Holders of Merrill Lynch Mortg. Investors v. Love Funding Corp., 496 F.3d 171, 173 (2d Cir. 2007) ("[O]rdinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right under 28 U.S.C. § 1291 to appeal therefrom." (citation, alterations, and internal quotation marks omitted)).

      The July 17, 2012 order did aggrieve and seriously injure plaintiff – this is precisely why this appeal was taken. In issuing its July 17, 2012 order directing plaintiff to prepare and file an approval motion based on its interpretation of the FLSA, the Court forced plaintiff to incur significant legal fees against her will – neither party asked for court approval and both parties intended to end the case with the filing of a simple stipulation of dismissal pursuant to FRCP Rule 41. Because the fees plaintiff was forced to incur by the July 17, 2012 order were not

---

[1] See Court Order at ECF #: 68, pg 1

1

accounted for in the settlement reached before said order was issued, the parties sought to settle the issue of the additional fees plaintiff had to incur because of the July 17, 2012 order. (A30, ¶ 5). The parties reached a conditional settlement regarding these additional fees – defendant agreed to pay an additional $1,000 to cover plaintiff's fees in connection with the motion for approval only if the Second Circuit or the Supreme Court found that the district court was wrong in forcing plaintiff to incur the legal fees in making the approval motion. (A30, ¶ 5). It is important to remember that while the fees plaintiff pays her counsel are governed by the retainer agreement between plaintiff and her counsel, it is plaintiff that owns the right to reimbursement and recovery of attorney's fees under 29 USC § 216(b) and the settlement agreement in this action which provides for the payment of the additional fees if this Court corrects the challenged ruling of the district court.

## 2. THIS APPEAL VERY MUCH PRESENTS A GENUINE CASE AND CONTROVERY AS TO THE DISTRICT COURT'S APPROVAL ORDER AND THE FEES INCURRED AS A RESULT OF THAT ORDER

We will next address the question raised by the court as to whether the grievance and injury suffered by plaintiff in the form of at least $1,000 in fees is sufficient to confer jurisdiction. In this regard, the Court stated in relevant part as follows[2]:

> It appears the only remaining controversy is plaintiff's claim to $1,000 in attorneys' fees, but we note that an "interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480 (1990); see also Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107-08 (1998) ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit.").

We respectfully observe that this appeal is very different from the two cases cited by the Court in the above excerpt. In <u>Lewis v. Continental Bank Corp.</u> 494 U.S. 472, 480-481 (U.S. Fla., 1990), for example, the Supreme Court stated in relevant part as follows:

> An order vacating the judgment on grounds of mootness would deprive Continental of its claim for attorney's fees under 42 U.S.C. § 1988 (assuming, *arguendo,* it would have such a claim), because such fees are available only to a party that "prevails" by winning the relief it seeks, see *Rhodes v. Stewart,* 488 U.S. 1, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988); *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). This interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim, see *Diamond v. Charles,* 476 U.S. 54, 70-71, 106 S.Ct. 1697, 1707-08, 90 L.Ed.2d 48 (1986).

Unlike the <u>Lewis</u> case, in this case, the district court's July 31, 2013 order approving the settlement agreement did not, "deprive [plaintiff] of [her] claim for attorney's fees." In fact, in approving the settlement agreement in its July 31, 2012 order, the district court reaffirmed

---

[2] See Court Order at ECF #: 68, pg 1

plaintiff's right to the additional $1,000 fees as provided for in settlement agreement and to file this appeal – that settlement agreement specifically conditioned plaintiff's entitlement to the additional $1,000 in fees on successful appeal of the court's order requiring court approval. (A30, ¶ 5). Moreover, unlike Lewis, there was no amendment of the FLSA or the issuance of any binding court ruling that mooted the issue of whether the FLSA requires court approval of overtime settlements or that mooted the overtime claims – the additional $1,000 in legal fees was an integral part of the overtime claims and the conditional settlement of the overtime claims – defendant agreed to pay legal fees because legal fees are one of the items of recovery on an overtime claim under 29 USC § 216(b). It therefore cannot be said that the issue of court approval is unrelated to the litigation of the overtime claims or this appeal. The issues are so deeply related that the district court ruled sua sponte that the FLSA prohibited the parties from settling the overtime claims without court approval, and the settlement of the overtime claim was in part conditioned on the outcome of this appeal. On appeal here, the approval issue is not only related to this appeal - it is the central substantive issue on appeal – resolution of which will entitled plaintiff to an additional $1,000 under the settlement agreement approved by the district court. (A30, ¶ 5).

Moreover, unlike in Steel Co, cited in the above excerpt, plaintiff here brought this case to recover overtime wages and did not bring "suit for the cost of bringing suit." Likewise, if we view the approval motion as a "suit" for purposes of the analysis in Steel Co., when plaintiff filed the motion for approval, she did so under compulsion of court order which directed her to seek court approval of the settlement and she was not "bringing suit for the cost of bringing suit." In addition, to the extent that this appeal is viewed as a "suit" for purposes of the analysis in Steel Co, this appeal was not brought to recover fees/costs of bringing this appeal. When plaintiff filed this appeal she was doing so to challenge a significant sua sponte ruling by the district court which caused her to incur significant legal fees. If plaintiff prevails on the underlying substantive "court approval" issue, she would then be entitled to an additional $1,000 in fees pursuant to the modified settlement agreement so-ordered by the district court. (A30, ¶ 5).

While the two cases cited in the above excerpt did not involve a settlement conditioned on the outcome of appeal, this Court's decision in In re Auction Houses Antitrust Litigation, 42 Fed.Appx. 511, 515, 2002 WL 1758897, 2 (2d Cir. 2002), did address such a situation. In Auction Houses, 42 Fed.Appx. at 515, the Second Circuit found jurisdiction over the appeal in such a situation after addressing the issue directly and stated in relevant part as follows:

> The Final Agreement also provided, however, that in the event of a successful appeal to this Court of the District Court's refusal to approve the settlement including the Original Release, the Original Release would be reinstated. Implicit in the Final Agreement, then, was a reservation of the Auction Houses' right to appeal the issue of whether Super Spuds precluded the District Court from approving the settlement including the Original Release.

Similarly, in this case, the modified settlement agreement approved by the district court in its July 31, 2012 order, provides that if plaintiff successfully appeals the district court's refusal to allow the parties to settle without court approval, plaintiff would be entitled to an additional $1,000 – which was incurred in complying with the order to seek approval. (A30, ¶ 5). The

3

argument for the exercise of jurisdiction in this case is a lot stronger than in Auction Houses for the reasons outlined above including the fact that plaintiff did not seek the court's approval but was forced to do so and incur fees for seeking such approval.

### 3. THIS COURT ALSO HAS SUPERVISORY JURISDICTION

This is also that type of case where this Court has supervisory jurisdiction to prevent chaos and to provide for uniformity in the interest of justice. See U.S. v. Jacobs 547 F.2d 772, 777 (2d Cir., 1976) ("We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system."). See also U.S. v. Ming He, 94 F.3d 782, 792 (2d Cir., 1996).

Plaintiff's counsel alone has filed over fifty FLSA cases in the New York federal district courts in just the last year - so there must be hundreds or thousands of FLSA cases in the federal district courts of the Second Circuit. Given that more than ninety percent of civil cases settle, the issue of whether the FLSA requires a fairness hearing and court approval of settlements affects the operation of the lower court and the rights of litigants on a very broad scale. The need for intervention is even greater because it is now fairly clear that litigants are being forced endure delays and significant expense in complying with approval orders based on an erroneous view of the FLSA. The chaos and the need for guidance was highlighted by the recent decision of the Honorable Judge Brian Cogan in Picerni v. Bilingual Seit & Preschool Inc., --- F.Supp.2d ----, 2013 WL 646649 (E.D.N.Y., February 22, 2013), changing his position on the issue and holding that the FLSA does not prevent the parties from settling without Court approval.

There is not only an inconsistency amongst judges, there is also an inconsistency with how individual judges have handled the issue over time. For example, Judge Kuntz and Judge Cogan currently do not prevent parties from settling FLSA cases without court approval, while Judge Gleeson and Judge Townes do prevent the parties from doing so[3]. However, I have had FLSA overtime cases with both Judge Gleeson and Judge Townes in the past where the parties were not prevented from settling without court approval[4]. Plaintiff's counsel has been litigating FLSA cases in the federal courts for over a decades and this case was the first time that a court prevented my client from settling an FLSA case without court approval – it is safe to say that more than 90 percent of FLSA settlements in the last decade at least, were settled without court approval. This raises a serious question of whether the thousands of FLSA cases that were settled without court approval are invalid – are judges now required to reopen those cases – are the parties now required to reporen those cases to seek court approval.  The lower courts are aware of the confusion and chaos and are seeking guidance from this Court. For example, in Archer v. TNT USA, 12-cv-01297 (SLT) (RML), the parties settled the case and filed a stipulation of dismissal to end the case after it was settled. Judge Townes then issued an order striking the stipulation of discontinuance and directing the parties to seek court approval of the settlement because it involved an FLSA claim. Plaintiff filed a motion for reconsideration based on the

---

[3] See Martin v. Kristal Auto Mall Corp., 12-cv-03439-JG-JO; and Archer v. TNT USA, 12-cv-01297 (SLT) (RML).
[4] See Hosein v. Golden Touch Transportation of NY, Inc., 07-cv-03578 (JG) (MDG) and Santelises v. 494 Bushwick Ave. Corp., 07-cv-05295 (SLT) (CLP)

arguments on this appeal. After several months of waiting, defense counsel wrote the court to ascertain the status of the case. The court responded and stated in relevant part as follows:

> As you note in your letter, plaintiffs counsel filed a motion for reconsideration on January 28, 2013. That motion raises a substantial issue which has divided the Circuit Courts and indicates that the issue is currently on appeal before the Second Circuit in *Cabrera* v. *Nassau Medical Service, P.C.* Accordingly, Judge Townes is inclined to await the Second Circuit's guidance before ruling on the pending motion.

Other district judges have also highlighted the need for guidance on the issue of court approval of FLSA settlements. The New York City federal courts are probably the premier in the country and this court should answer the call for guidance and end the chaos, inconsistency and harm that now exist. Even if the standard for supervisory jurisdiction is not met, the arguments in favor of supervisory jurisdiction also buttress the arguments in favor of the traditional bases of jurisdiction as well as the need for a relaxed standard of standing/jurisdiction in the case.

I thank the Court in advance for its time and consideration.

Respectfully submitted,

_/s/ Abdul Hassan_____
Abdul K. Hassan, Esq. - *Counsel for Plaintiff*

*cc: Defense Counsel Bruce Provda, Esq. via ECF*